Opinion delivered May 15, 1889.

27  623
30  331

No. 6458.

J. H. HANNAH v. THE STATE.

THEFT—CHARGE OF THE COURT—CIRCUMSTANTIAL EVIDENCE—POSSESSION OF RECENTLY STOLEN PROPERTY—FACT CASE.—See the statement of the case for charges of the court on circumstantial evidence and upon the possession of recently stolen property, *held* erroneous, and see the same for evidence *held* insufficient to support a conviction for theft.

APPEAL from the County Court of Burnet. Tried below before the Hon. R. W. Cates, County Judge.

The conviction in this case was for the theft of two cotton sacks, and three hundred pounds of seed cotton, of the aggregate value of eight dollars. The penalty assessed by the verdict was a fine of twenty-five dollars and imprisonment in the county jail for sixty days.

Peter Baumgardner was the first witness for the State. He testified that he lived on Rock creek, in Burnet county. He left his wagon, containing a quantity of seed cotton, and two certain cotton sacks, standing in the field of his said place on the night of September 10, 1888. The said two sacks, one being a new one, and the other an old one made of an old wagon sheet, and about three hundred pounds of the seed cotton, were stolen from the said wagon on the said night. The sacks and cotton so taken were of the aggregate value of eight dollars. Upon discovering the theft on the next morning the witness and certain of his neighbors, in looking over the premises, discovered a trail marked at intervals by locks of cotton. They were able to trace that trail down the Burnet and Belton road about half a mile, where they lost it. The point where they lost the said trail was about a mile and a half from defendant's house. At that point they discovered the trail of two horses which they followed, in the direction of defendant's house, to a point about a mile distant from defendant's said house. One of the horses was shod in front. The other horse was unshod, and had a "gotch" broken from one of his feet. When they lost this trail the witness and his friends, in search of the cotton, went first to Mr. Reed's and then to Mr. Russell's house, and thence to the defendant's. They found defendant in his field picking cotton, and told him of the theft of the witness's cotton and sacks on the previous night. The information thus given the defendant apparently excited him, and he sat down on the sack he then had in use. Witness remarked that the said sack then in defendant's possession looked like one of the sacks that he had lost, and asked permission to examine it, with which request defendant at once complied, but claimed at the time that the sack was his property. Witness turned the sack partly wrong side out, and told defendant that the sack looked like his, but that he might be mistaken. Witness and his friends then started off. When they had gone a short

distance witness told his friends that the sack then in possession of defendant was in fact one of the sacks stolen from his wagon on the previous night. Witness and his party then went back and arrested defendant. Defendant then requested witness and his party to search his premises for the missing cotton. The search failed to discover any cotton that witness could identify as his property. Defendant then directed witness to the best crossing of Rocky creek. After crossing the creek at that point, and getting across the prairie beyond, the witness and his party discovered the trail of two horses, the tracks corresponding to the tracks previously followed on that day. That trail led the witness and his party to a certain place in the fence around the defendant's field, where the fence had evidently been recently taken down to admit the passage of the two horses, and then replaced. The horses went into defendant's field, and on the trail just outside of the field, witness discovered two or three locks or pods of seed cotton.

On his cross examination, the witness stated that he fully identified the sack found in defendant's possession and now exhibited to the jury, as his property, and as one of the same sacks that were stolen on the said night. The witness and his wife made the said sack of a part of an old wagon sheet. The witness had used it a few times as a cotton sack, and had never had bran in it. He had never pinned up a hole in the bottom of the said sack with a needle. Turning the sack wrong side out in the presence of the jury, the witness said: "I find what appears to be bran in the bottom of this sack, and I find in the bottom of this sack a rusty needle which appears to have been used to close a hole in the sack." Quite a number of people lived in the witness's neighborhood and along the road over which the witness followed the men and the horse tracks, as described. At a point in the road about a mile from his, witness's, said field, the witness found the impress of a number nine shoe. It showed a patch on the bottom in which there were six tacks. Witness afterward observed the same peculiarities in a track he saw defendant make in the field, and a measurement showed the two tracks to be of the same exact size.

Mrs. S. A. Baumgardner, the wife, and John Baumgardner, the son of the prosecuting witness, identified the sack in evidence as the property of the said prosecuting witness, and

stated further that, so far as they knew, it had never contained bran, and had never been pinned with a needle.

The State's witnesses J. N. Clark and David Houghton testified substantially as did Peter Baumgardner as to the trailing of cotton locks and the horse tracks over the road, and the discovery, at a point in the road about a mile distant from the Baumgardner field, of a foot track that corresponded with that of defendant.

The State rested.

Mrs. S. A. Hannah, the wife of defendant, was the first witness for the defense. She testified that she and her husband lived in Burnet county about three miles distant from Baumgardner's place. She knew that defendant owned a cotton sack similar in every respect to the sack in evidence, but she was unable to identify the sack in evidence as that particular sack. She knew as a matter of fact that the defendant was not away from his home on the night of the alleged theft. She knew it from the fact that three of her children were sick on that night, and she and defendant sat up throughout the whole of the night administering medicine to and attending upon them. They lost one of their said children in that sickness.

Jim Rutledge testified, for the defense, that he hunted for cows on the day preceding the night of the alleged theft, and in doing so traveled over the route indicated by the State witnesses in their testimony on this trial as to a trail of horses followed by them. He found two of his said cows in the defendant's field, and to get into the field he tore down the fence at the place indicated by the State's witnesses. He then drove his cows out of the said field at a different place, and then rode through defendant's cotton patch and out of the field at the place where he had pulled down the fence, and then replaced the fence. State's witness Nix measured the track of his horse and told witness that, to the sixteenth of an inch it fitted the track trailed by him and Baumgardner and others from the field whence the cotton and sacks were alleged to have been taken.

J. W. Williams testified, for the defense, that about three weeks before the alleged theft he witnessed the purchase of some seed cotton in sacks by defendant from John Ervin. The sack in evidence looked like one of the sacks purchased by defendant from Ervin. About two weeks before the alleged theft witness borrowed some sacks from defendant for use in trans-

porting bran. One of these sacks was made from an old wagon sheet, and it had a hole in the bottom. Observing the escape of bran, the witness, having no pin, pinned up the hole with a needle. The sack in evidence showed to have been used once to hold bran, and it had a hole in the bottom into which a needle was yet pinned. Witness returned the sack he borrowed to defendant about September 1, 1888.

Defense closed.

Jonathan Nix was then called to the stand by the State. He testified that, after arresting the defendant, he, witness, took charge of the sack found in his possession—being the sack now in evidence—and that said sack had been in custody of officers of the law ever since, and that neither the defendant nor his counsel had been permitted to see or examine that sack, after its seizure, until produced by the State, in evidence on this trial.

The court's charge on circumstantial evidence, referred to in the headnote, reads as follows: "In this case the State relies upon circumstantial evidence, and to justify a conviction on such evidence alone, the facts relied upon must be absolutely incompatible with the innocence of the accused and incapable of explanation upon any other reasonable hypothesis than that of guilt."

The charge upon recent possession also involved in the ruling of the court reads as follows: "You are further instructed that if a party in whose possession property recently stolen fails satisfactorily to account for his possession, the presumption of guilt arising from recent loss and possession will warrant a presumption of theft, and proof of possession of a part of the stolen property, if unexplained, will support a conviction for theft of all of it, and that it was all taken at the same time; but proof of possession will not be sufficient to warrant a conviction. if the other facts in evidence are not consistent with the guilt of the defendant. You are further instructed that if a person found in possession of recently stolen property makes an explanation of his possession of said property, at the first opportunity offered, and such explanation is reasonably and probably true, it operates to rebut the presumption of guilt arising from his possession of the property and in such case, if such explanation be not shown to be false, further evidence of defendant's guilt will be required to warrant the conviction; but the State is only required to prove the falsity of the defendant's

explanation made at the time his possession was challenged, and the State can not be required to disprove every conflicting explanation the defendant may have made."

*J. G. Cook* and *T. E. Hammond*, for the appellant, citing against the sufficiency of the evidence to support the conviction, Rosborough v. The State, 43 Texas, 570; Rodriguez v. The State, 5 Texas Court of Appeals, 256; Pogue v. The State, 12 Id., 283; Roberts v. The State, 17 Id., 82; Windham v. The State, 19 Id., 413; and upon the proposition that the charge of the court upon the recent possession was erroneous, the following: White v. The State, 13 Texas, 133; Burrell v. The State, 18 Id., 713; Perry v. The State, 41 Id., 484; Anderson v. The State, 2 Texas Court of Appeals, 10; Watkins v. The State, Id., 73; Merritt v. The State, Id., 173; Williams v. The State, 4 Id., 178; Bejarano v. The State, 6 Id., 282; Maddox v. The State, 12 Id., 429; Davis v. The State, 10 Id., 31; Gose v. The State, 6 Id., 121.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. In this case the Assistant Attorney General frankly confesses that he can not ask an affirmance of the judgment. The evidence is wholly insufficient to sustain the verdict and judgment, and even if the evidence was sufficient the judgment would have to be reversed on account of errors in the charge of the court, both in regard to the instructions as to circumstantial evidence and recent possession.

*Reversed and remanded.*